## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**JOEY MONTRELL CHANDLER**                                    **PETITIONER**

**V.**                                    **NO. 1:08-CV-093-SA-JAD**

**CHRISTOPHER EPPS, ET. AL.**                                    **RESPONDENTS**

### MEMORANDUM OPINION

Joey Montrell Chandler ("Chandler"), an inmate in the custody of the Mississippi Department of Corrections, filed a petition for a writ of *habeas corpus* challenging his conviction and sentence in the Circuit Court of Clay County, Mississippi on the charge of murder. The State has responded to the petition, and the matter is ripe for resolution. Having considered the briefs and record in this matter, the court holds that the petition should be denied.

### Fact and Procedural Posture

On August 16, 2003, Joey Montrell Chandler was looking for a way to "make a little extra money." S.C.R., vol. 5, pp. 452-53.[1] He was seventeen years old with a pregnant girlfriend. According to Chandler, he had a quarter pound of marijuana he planned to sell. *Id.* at 452. The marijuana was wrapped in a blue shirt and tucked between the seats of his car. *Id.*. However, on the night of August 16, while at local nightclub Club Hollywood, Chandler allegedly saw his cousin Emmitt Chandler ("Emmitt"), coming out of the car with the blue shirt and marijuana in his hands.

---

[1] Some facts are taken from the Mississippi Supreme Court opinion, *Chandler v. State*, 946 So. 2d 355 (Miss. 2006), while all others are gleaned from the 9-volume State Court Record (S.C.R., vol. __, __).

*Id.* at 453, 469.[2]

On the following day, August 17, 2003, Chandler returned to Club Hollywood and found his blue shirt, but not the marijuana. *Id.* at 474. He testified that he was scared and feared for his safety because he had heard rumors about the stolen marijuana. *Id.* at 485. In response to this fear, Chandler went to his uncle's house and took a pistol from his uncle's unlocked car. *Id.* at 486.

With the pistol tucked into his pants, Chandler later ran into Emmitt at the Pheba Quick Stop. They spoke briefly, and Chandler followed Emmitt to the Pheba community.

> Q. So why did y'all leave that location?
>
> A. Well, Emmitt, he wanted to take us down to Pheba. He said he had something to show me down there, something that belonged to me that he wanted to give me that was in the Pheba area, and he wanted me to trail him and Shawn there.

*Id.* at 484-85.

After arriving in Pheba, Emmitt confronted Chandler, and asked if he would follow him into the woods so Emmitt could show him something.

> Q. Okay. So then what happened?
>
> A. Well, they argued and talked and talked and argued and whatever, and then Emmitt said he wanted to go into the woods, so he said, Cous, would you come out here in the woods with me?
>
> Q. Why?
>
> A. Because he said there was some stolen items out there that belonged to me that he wanted to show me that some guys had stolen.
>
> Q. What kinds of items?

---

[2] In the record, Emmitt Chandler's name is spelled as both Emmitt and Emmet. This opinion will spell his name as Emmitt unless it is spelled differently in a quoted passage.

A.  Car parts.

Q.  Nothing else?

A.  Not that I can recall besides they was saying – some of the guys was saying there was drugs out there that they had , you know, stashed out there.

*Id.* at 490.

Following Emmitt's proposition, Chandler followed Emmitt into a nearby wooded area, the gun still hidden in his pants. *Id.* at 490-91. As Emmitt and Chandler walked off, several residents who lived nearby followed them into the woods, which opened up into a small clearing a few feet past the tree line.[3]

Chandler testified that after entering the wooded area, all of the men began arguing over where the stolen marijuana was located. *Id.* at 491. According to Chandler, he and Emmitt were standing approximately 12 to 24 inches from each other, while the other men were standing in a circle approximately a foot-and-a-half behind Petitioner. *Id.* at 493. Chandler further testified that Emmitt began bumping against him and threatening him.

Q.  What was he telling you?

A.  What was he telling me? He was telling me that you're a punk and my shotgun – anybody come near you, I will kill them, and my shotgun do this and that.

Q.  You didn't see a shotgun, did you?

A.  No, sir.

*Id.* at 495.

_____

[3] According to Chandler, he, Emmitt, Dana Gustavis, Antoine Belt, Robert Carouthers, and Brandon Ewing were in the wooded area at the time Emmitt was shot. *Id.* at 492. Gustavis, Belt, and Carouthers all testified at trial.

Chandler testified that at some point during the argument Emmitt reached into Chandler's pants and grabbed the pistol he was hiding. *Id*. According to Chandler, Emmitt was holding the barrel while Chandler was holding the handle. *Id.* at 496. Chandler testified that during the struggle over the pistol's possession the pistol discharged three times and two bullets struck and ultimately killed Emmitt.

Chandler was indicted for murder by a Clay County grand jury on October 13, 2003. Chandler was tried and convicted of murder on January 14, 2005 in the Circuit Court of Clay County. Following his conviction, he appealed to Supreme Court of Mississippi, which affirmed his conviction on December 7, 2006. Chandler then filed a motion for rehearing, which was denied on January 25, 2007. Following his direct appeal, he filed a motion for leave to seek post-conviction relief. The Mississippi Supreme Court denied the motion on December 16, 2008.

Chandler then applied for a federal writ of *habeas corpus* in this court. The State responded to the motion on March 27, 2009. Petitioner has submitted numerous replies and other motions. For the reasons set forth below, the instant motion for a writ of *habeas corpus* will be denied.

### Joey Chandler's Claims Under 28 U.S.C. § 2254

In his petition for a writ of *habeas corpus*, Chandler alleges:

1.  The trial court erred in denying defense instructions on culpable negligence manslaughter and reasonable self-defense.

2.  Petitioner was denied effective assistance of counsel at trial and on direct appeal by counsel's failure to assert meritorious speedy trial violation.

3.  Petitioner was denied effective assistance of counsel at trial and on direct appeal by counsel's failure to object to the misuse of impeachment evidence and failure to have the jury instructed on limited use of impeachment evidence.

4.  Petitioner was denied effective assistance of counsel at trial and on direct appeal where

counsel failed to object to prejudicial expert testimony that was admitted in violation of state law.

5.      Petitioner was denied effective assistance of counsel at trial and on direct appeal where counsel failed to object to the admission of prejudicial and speculative expert testimony.

6.      Petitioner was denied effective assistance of counsel at trial and on direct appeal by counsel's failure to request a jury instruction on the right to carry a concealed weapon.

7.      Petitioner was denied effective assistance of counsel at trial and on direct appeal by counsel's failure to object to the use of "other crimes" evidence.

8.      Petitioner was denied effective assistance of counsel at trial and on direct appeal by counsel's failure to request and assert the need for an "impeachment instruction."

9.      Petitioner was denied effective assistance of counsel on direct appeal.

10.     Petitioner was denied a fair trial due to the cumulative effect of the errors raised in Grounds 1-9.[4]

## Trial Court's Failure To Give Instructions On Culpable Negligence Manslaughter and Reasonable Self-Defense.

Chandler first alleges the trial court erred by denying jury instructions offered by the defense regarding culpable negligence manslaughter and reasonable self-defense.  Chandler claims that evidence was produced by the defense supporting both theories of defense.  He further claims that the denial of those instructions "cut off the jury's consideration of these two defense theories and precluded the Petitioner from asserting these defenses unimpaired."  Petition, p. 6.

_____

[4] Ground Ten was raised by Chandler in an Amendment to Petition filed on March 19, 2009.

Under 28 U.S.C. §§ 2254(d) and 2254(e)(1), this Court's review of federal *habeas corpus* claims is limited.[5]  28 U.S.C. § 2254 provides:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

Challenges to jury instructions do not generally form a basis for federal *habeas corpus* relief. *Gilmore v. Taylor*, 508 U.S. 333, 343-44 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71 (1991).  "[T]he [challenged] instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record."  *Hughes v. Johnson*, 191 F.3d 607, 627-28 (5th Cir. 1999) (citing *Estelle*, 502 U.S. at 72)).  "Moreover, there is a strong presumption that errors in jury instructions are subject to harmless-error analysis.  Thus, even if the instruction was erroneous, if the error is harmless, *habeas corpus* relief is not warranted."  *Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993)).  For purposes of *habeas corpus*, "a constitutional error is not harmless if it 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Id.* (citations omitted).

---

[5] Because Petitioner's claim under Ground One was raised on direct appeal to the state's highest court, review of Petitioner's claim is limited pursuant to 28 U.S.C. § 2254.  Likewise, Petitioner's claims in Grounds Two, Three, Four, Five, Six, Seven, Eight, and Nine are afforded limited review in light of the state court's review of those issues in Petitioner's motion for post-conviction relief.

Unless a petitioner establishes that an improper instruction rose to the level of a constitutional violation, *habeas corpus* will not lie to set aside the conviction. *Gilmore*, 508 U.S. at 348-49. The burden of demonstrating that errors in jury instructions were sufficiently prejudicial to support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145-154 (1977). "[T]he relevant inquiry is whether the failure to give an instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Galvin*, 293 F.3d at 765 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

In the present case, Chandler raised this claim in the Supreme Court of Mississippi on direct appeal, and that court found no error in the trial court's refusal to grant the instructions. *See Chandler*, 946 So. 2d at 358-63. After setting forth the necessary elements of culpable negligence manslaughter, the court concluded, with regard to the proposed instructions involving culpable negligence, D-14 and D-11, that the instructions were not supported by the evidence and were thus properly refused. *Id.* at 361-62. The Mississippi Supreme Court noted that none of the three testifying witnesses who were present in the woods confirmed Chandler's testimony. *Id.* at 362. "In fact, all witnesses stated that Chandler and Emmitt were facing each other in the woods. Carouthers and Belt testified that Chandler and Emmitt were having a conversation. Belt stated that the conversation was normal with no arguing or loud talking." *Id.* According to their individual testimony, Carouther saw Chandler pull a gun out and point it toward Emmitt. *Id.* Belt saw Chandler pull a gun out and rub the side of his head with it – testimony that was corroborated by Gustavis. *Id.* Indeed, Gustavis testified that he saw "Chandler cock the gun and shoot it," a version of the events admitted by Chandler in a pretrial statement to Clay County Sheriff's Department

investigator Joe Huffman. *Id.* at 361-62 (In a statement to Officer Huffman on the night of the shooting, Chandler stated, "I pulled the gun out and aimed it and shot. Pulled the trigger."). In light of the facts and evidence presented at trial, the court determined that a culpable negligence manslaughter instruction was not warranted.

The Mississippi Supreme Court also discussed the trial court's denial of reasonable self-defense instructions. The court found that "[f]irst and foremost, Chandler never testified that his actions were in self-defense." *Id.* at 363. Further, the court pointed out that by arming himself in advance, a person deprives himself of the right of self-defense. *Id.* (citations omitted). The court also noted that Chandler testified the gun fired three times, which meant that the revolver's trigger "had to have been pulled three times." *Id.* at 364. Under such facts, the court concluded that a reasonable self-defense instruction was not warranted.

Lastly, the court noted that the jury was instructed as a whole, not only on the murder charge, but also on imperfect self-defense manslaughter and on "accident or misfortune." *Id.* at 362, 364. The court held that the "trial court more than adequately instructed the jury." *Id.* at 364.

As set forth in 28 U.S.C. § 2254, this court's review of federal *habeas corpus* claims is limited. Regarding Ground One, Chandler has failed to prove the state court's adjudication of the claim was (1) contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Chandler never claimed that his actions were in self-defense until now, and none of the eyewitness testimony corroborated his testimony. Thus, Chandler is not entitled to relief on this ground, and it will be dismissed.

## Ineffective Assistance of Counsel

Chandler sets forth ineffective assistance of counsel claims in Grounds Two through Nine. Each will be discussed in sequence below.

A criminal defendant has the constitutional right to effective counsel. U.S. Const. amend. VI, XIV. In order to establish that he was denied effective counsel, Petitioner must show that his attorney rendered a constitutionally deficient performance that actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires the Petitioner to show (1) that counsel's performance fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that, but for counsel's deficient performance, the result of the proceeding would have been different. *See id.* at 688, 695. Judicial scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance or sound trial strategy. *See id.* at 668, 688-89. Both the "deficiency" and "prejudice" prongs must be satisfied, or it cannot be said that the adversarial process was so lacking that it rendered an unreliable result, thereby denying Petitioner a fair trial. *Id.* at 687.

## Failure To Assert Chandler's Right To Speedy Trial

In Ground Two, Chandler argues that he was denied effective assistance of counsel at trial and on direct appeal because counsel failed to assert a meritorious speedy trial violation. Chandler claims there was presumptively prejudicial delay with no reason given by the state for such delay. Chandler also claims that counsel's conduct was deficient in failing to assert whether the delay of seventeen months was unlawful, unreasonable, and whether it warranted dismissal of the charges. He last claims a reasonable probability of dismissal of the charges existed.

In determining whether a petitioner has been deprived of his constitutional right to a speedy

trial the court must conduct the four-pronged test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).

The court must weigh four factors to determine whether the state court proceedings violated

Chandler's right to a speedy trial: (1) length of delay, (2) reason for the delay, (3) accused's

assertion of the speedy trial right, and (4) prejudice to the accused. *Id.* at 530. These factors must

be considered together, and no single factor is determinative. *Id.* at 533. In regard to the length of

delay, the first factor serves as a "triggering mechanism." *Id.* at 530. "Until there is some delay

which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into

the balance." *Id.*

In the Fifth Circuit, a delay of one year is routinely recognized as "presumptively

prejudicial." *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993) (citing *Nelson v. Hargett*, 989 F.2d

847, 851 (5th Cir. 1993)). Although it is unclear from the record precisely when Chandler was

arrested, it is clear that the length of time from the indictment in October 2003 until his trial in

January 2005 would be considered "presumptively prejudicial" under *Barker*. Therefore, because

the *Barker* test has been "triggered," the court will consider the remaining factors.

Under the second prong of *Barker*, the court must examine the reason for delay. The state

court record shows that Chandler was arraigned in October 2003, and the trial was originally set for

January 20, 2004. S.C.R., vol. 1, p. 8. The trial court docket also reflects that four orders of

continuance were filed on Chandler's behalf beginning in January 2004. *Id.* at p. 5B. All four were

filed by defense counsel and listed a variety of reasons a continuance should be granted, including

defense counsel having surgery; ongoing investigation by both sides; and the fact that, as of October

2004, defense counsel had just supplied the state with additional discovery. Therefore, in light of

the four continuances filed by Chandler, the reason for delay was caused in large part by his own

actions.  Thus, the second *Barker* factor weighs against him.

The third *Barker* factor is whether Chandler asserted his right to a speedy trial.  In this case, neither Chandler nor his counsel asserted that right.  When taken in light of the four continuances Chandler requested, the choice was rational – a sound tactic and trial strategy – which the court will not disturb in hindsight.  Of the four continuances Chandler sought, three mentioned ongoing discovery or investigation as a reason for requesting more time, and Chandler sought the fourth because defense counsel was underwent surgery.  Thus, this factor weighs against Chandler.

Finally, the court must determine whether Chandler suffered prejudice from the delay.  As discussed above, defense counsel actively investigated the case, and Chandler has presented no evidence showing that counsel's effort was negatively impacted from the passage of time.

Balancing the four *Barker* factors, the court holds that Chandler has not shown that he was deprived of the right to a speedy trial.  Three of the four factors weigh against him, and the first factor is triggered only because Chandler himself sought four continuances.  Chandler's right to a speedy trial was not violated; as such, his counsel cannot be faulted for not raising such an assertion.  Accordingly, Chandler is not entitled to relief on this ground, and it will be dismissed.

## Failure To Object To Misuse of Impeachment Evidence

In his third ground for relief, Chandler argues that counsel was ineffective for failing to "object to misuse of impeachment evidence and fail[ing] to have jury instructed on limited use of impeachment evidence." Chandler claims that the state improperly used his initial statement to Officer Huffman that he pulled out the gun, aimed and shot Emmitt to impeach his testimony that the shooting was not intentional. He alleges "[t]he state did not present this statement as a voluntary confession which would be substantive evidence in its case-in-chief, but used the statement to impeach Petitioner's testimony which supported his defenses while Petitioner testified, and later used the impeachment evidence as substantive evidence of his guilt." Chandler argues that defense counsel was ineffective for failing to object to the use of his prior statement and for failing to request a limiting instruction regarding the statement.

Impeachment by way of a prior statement to police is permissible under federal law. *Harris v. New York*, 401 U.S. 222, 225 (1971) ("Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury."). The state showed that the statement was initially brought to the jury's attention by Chandler's counsel on cross-examination of Officer Huffman. (Answer to Pet., p. 23). In eliciting the statement, later revisited during counsel's direct examination of Chandler, counsel sought to establish that Chandler himself called Officer Huffman within a short time after the shooting, and later turned himself in voluntarily. (S.C.R., vol. 5, pp. 595-97). Earlier in Chandler's testimony, the prosecutor noted on the record that his trial testimony conflicted with his previous statement to police. *Id.* at pp. 451-64. As a result of the conflicting testimony, the trial judge allowed the prosecutor to cross-examine Chandler regarding the initial statement. (*Id.* at 464). As such, the

conflict between the Chandler's statement and his testimony opened the door for the prosecution to use the statement during cross-examintion, and defense counsel had no legal basis upon which to object. Therefore, counsel's performance was not ineffective.

In his second claim under Ground Three, Chandler argues counsel should have requested a limiting instruction with regard to the statement. Chandler has not, however, shown that counsel's strategy was so ill-chosen that it permeated the trial with obvious unfairness. *Mosley v. Quarterman*, 306 Fed. Appx. 40, 48 (5th Cir. 2008).

The case of *Coulson v. Johnson*, 273 F.3d 393, 2001 WL 1013186 (5th Cir. 2001) is on point. In that case, the petitioner made several incriminating statements following arrest, which were later used by the prosecutor to impeach his testimony at trial. There, the Fifth Circuit found that, given the totality of the evidence before the jury, the petitioner "fail[ed] to show that the outcome of the proceeding would have been different if counsel had requested and received a limiting instruction." *Id.* at *19. "In determining whether there was prejudice, a reviewing court is required to consider the totality of the evidence before the jury." *Id.* (citing *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995)).

As previously discussed, none of the witnesses' testimony corroborated Chandler's. Furthermore, one of the witnesses testified that he actually saw Chandler point the gun at Emmitt – and shoot him. Given the testimony of the other witnesses – and Chandler's statement to the police – he has not shown that the outcome of the proceeding would have been different if counsel had requested and received a limiting instruction. Therefore, his claim fails to meet the prejudice prong of *Strickland*. As such, Chandler has not satisfied the prejudice prong, the court need not address whether Chandler has proved prejudice. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994). For

these reasons, this claim will be dismissed.

**Failure To Object To Use Of Prejudicial and Speculative Expert Testimony**

Grounds Four and Five set forth the same claim; as such, the court will address them together. The issue is not procedurally barred because Chandler raised it with the Mississippi Supreme Court in his petition for post-conviction relief. (*See* Pet. for Post-Conviction Relief, pp. 3-6). Turning to Ground Four, Chandler alleges that defense counsel was ineffective by failing to object to the use of prejudicial expert testimony that was admitted in violation of state law. He claims that state law allows expert testimony to be used only after it has been proven through foundational evidence and determinations are made by the trial judge that (1) the testimony is relevant; and (2) the testimony is reliable. He claims that "[t]he expert testimony was prejudicial, and had a substantial and injurious effect or influence on the jury, as it buttressed and corroborated and rehabilitated [the] state's impeached eyewitnesses, and detracted from Petitioner's defense." (Petition, p. 11).

In Ground Five, Chandler argues that trial counsel and appellate counsel were deficient for failing to address the admission of prejudicial, speculative testimony. Chandler claims that the state's expert witness, Dr. Steven Hayne, testified as to whether Emmitt's wounds were inflicted while the weapon was in contact with him – or from a distance. Chandler argues that Dr. Hayne's testimony was speculative due to his failure to use the state's Electron Microscopy Unit to determine whether gunpowder could be located in the wound, which would indicate the victim suffered a contact wound. Chandler stresses the importance of this fact in light of his defense that the shooting occurred during a struggle with Emmitt while Emmitt held one end of the gun.

In *Ward v. State*, 461 So. 2d 724 (Miss. 1984), the Mississippi Supreme Court refused to

grant a petitioner's claim for ineffective assistance of counsel. Without inquiring into the ineffectiveness criteria set forth in *Strickland*, the court stated "[a] fundamental reason why no prejudice can be demonstrated in this case is that it is clear from the record that [petitioner] is *hopelessly guilty*. This overwhelming evidence of guilt makes the determination by the jury in this case thoroughly reliable." *Ward*, 461 So. 2d at 727 (emphasis added). The evidence against Chandler in his criminal case was likewise overwhelming and reliable.

Three eyewitnesses testified against Chandler, and all of the testimony of these witnesses contradicted Chandler's. In fact, one of the witnesses, Dana Gustavis, testified to actually seeing Chandler cock the gun at and shoot Emmitt. (S.C.R., vol. 3, pp. 287-89). Another witness, Robert Carouthers, testified that he saw Chandler holding a gun while standing some distance away from Emmitt only seconds before hearing two or three shots. *Id.* at pp. 183-85; 189-90. Antoine Belt testified that he saw Chandler pull out the revolver, open it up, look in it, spin the cylinder, and close it up only seconds before the shooting started. *Id.* at 234-36. None of the witnesses testified that Emmitt was threatening Chandler or that Emmitt had a gun. Moreover, as discussed above, in his initial statement to police, Chandler admitted that he pulled out the gun, aimed it, and shot Emmitt. Based on this evidence, Chandler is "hopelessly guilty," and the court can conceive no strategy that would have changed the outcome of the case.

Furthermore, counsel's decision on whether or not to object is a matter of trial strategy, and a "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *see also Jones*, 287 F.3d at 331 ("'Informed

strategic decisions of counsel are given a heavy measure of deference and should not be second guessed.'" (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999))); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."). Thus, counsel's decision not to object to Dr. Hayne's testimony regarding the victim's gunshot wounds was strategic in nature, did not infect the trial with unfairness, and is thus not subject to the court's second-guessing in hindsight. Chandler has not met the standard set forth by the Supreme Court in *Strickland*. As such, these claims will be dismissed.

### Failure To Request Jury Instruction Right To Carry Concealed Weapon

In Ground Six, Chandler claims that counsel was ineffective at trial and on direct appeal because he did not request a jury instruction on his right to carry a concealed weapon. Chandler alleges that when a prosecutor points out that the victim was unarmed when shot, the jury may infer the defendant was in the wrong by being armed. He claims that in such a circumstance, it would be reversible error not to have the jury instructed that the defendant had a right to carry a concealed weapon if he had been threatened and had reason to fear a serious attack and did fear such attack.

The Mississippi Supreme Court has found that a criminal defendant is entitled to an instruction that informs the jury the defendant has a right to carry a concealed weapon under the circumstances set forth in Mississippi Code Section 97-37-9, which includes the occasion where a defendant has been threatened and has "good sufficient reason to apprehend a serious attack from an enemy." *Booker v. State*, 745 So. 2d 850, 855 (Miss. Ct. App. 1998) (citations omitted). However, the right to have the jury so instructed is neither unlimited nor available in every case

where such circumstances as those set forth in the statute actually exist. *Id.* Rather, "before such an instruction [is] warranted, there must be evidence in the record demonstrating the existence and reasonableness of such an apprehension on the part of the defendant." *Id.*

The facts of the instant case do not lend themselves to an instruction regarding Chandler's right to carry a concealed weapon. Only Chandler's vague testimony regarding rumors about the stolen marijuana even hints that he had "good and sufficient reason to apprehend a serious attack," and that testimony does not pinpoint who might have attacked him and why. As pointed out above, none of the witnesses corroborated this testimony. In addition, only Chandler testified that Emmitt was threatening him in the woods just before Emmitt was shot. Robert Carouthers testified:

Q. Did you see Emmitt making any moves at all toward this defendant?

A. I did not.

Q. Anything that looked like he was assuming an aggressive posture?

A. He was just standing there.

Q. Did you hear him making any threats at all to this defendant?

A. I didn't hear him say a word.

(S.C.R., vol. 3, p. 185).

Antoine Belt offered a similar account of the events that transpired in the woods:

Q. And they're having a conversation. Can you hear them?

A. No, ma'am.

Q. Do you know what they're talking about?

A. I wasn't trying to listen to what they were talking about really.

Q. Did they look like they were fighting?

-17-

A.  No.  They looked like they was just having a normal conversation.

. . .

Q.  At any point did you see any weapon on Emmitt Chandler?

A.  No, ma'am.

Q.  At any point in time, did you see them fighting, him lunge at him, or anything of that nature?

A.  No, ma'am.

(S.C.R., vol. 3, pp. 233, 235).

The only other person in the woods that day to testify, Dana Gustavis, offered a similar story:

Q.  Let me stop you there.  When Joey Chandler pulled this gun out, when you saw this defendant pull the gun out of his pants, what was Emmitt doing?

A.  Just standing there.

Q.  Now, tell me about how far away from this defendant Emmitt Chandler was when this defendant pulled a gun out of his pants?

A.  I mean, they wasn't that far.  They was like – they weren't like right by each other, but maybe six feets [sic].
. . .

Q.  I want you to stand up, if you would –

A.  (Witness complies)

Q.  – and show the ladies and gentlemen of the jury what you saw this defendant do with that weapon.

A.  Like this (Demonstrating).  Rubbing against his head and then he cocked it and shot him.
. . .

Q.  Did Emmitt have a gun?

A.  Uh, I didn't see him with one.

-18-

Q. You never saw him pull a gun. Did you ever know Emmitt to carry a gun?

A. No, sir.

Q. How well did you know him? Pretty well?

A. Pretty good.

Q. You saw him a lot?

A. Uh-huh.

Q. And you never knew him to carry a gun?

A. I never seen him with a gun.

Q. Did you see anybody else out there with a gun?

A. No, sir.

Q. Did you see Emmitt make any aggressive moves towards this defendant or threaten him in any way?

A. No, sir.

Q. Was anyone out there in the woods doing anything to threaten this defendant or being aggressive to him?

A. No, sir. I didn't even know who he was. I didn't know him until that day

(S.C.R., vol. 3, pp. 286-90).

No reliable and consistent evidence in the record suggests that Chandler had been threatened or that he had "good and sufficient reason to apprehend a serious attack" by his cousin, Emmitt. Because the facts did not support such an instruction, counsel cannot be deemed ineffective for failing to request one. Accordingly, this claim lacks merit and will be dismissed.

### Failure To Object To "Other Crimes" Evidence

In Ground Seven, Chandler claims that he was denied effective assistance of counsel when

counsel failed to object to "other crimes" evidence presented by the prosecution. Chandler claims that, despite his being on trial for murder, the prosecution put on testimonial evidence of uncharged, unconvicted crimes of large amounts of drug dealing and gun theft – and mentioned that evidence during closing arguments. In his *habeas corpus* petition, Chandler claims that state law requires (a) a showing that other crimes evidence has probative value; (b) weighing probative value against unfair prejudice from other crimes evidence; and (c) giving cautionary or limiting instruction on use of the other crimes evidence. He argues that defense counsel's failure to request such a limiting instruction violated his Sixth Amendment right to effective assistance of counsel.

In order to establish that counsel's performance was in any way deficient, Chandler must show that the evidence which he complains of was inadmissible and that an objection to the evidence was warranted under state law. "Proof of another crime is admissible where the offense charged and that offered are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." *Neal v. State*, 451 So. 2d 743, 758-59 (Miss. 1984). "Where substantially necessary to present to the jury 'the complete story of the crime,' evidence or testimony may be given though it may reveal or suggest other crimes." *Jones v. State*, 920 So. 2d 465, 474 (Miss. 2006); *see also McGowan v. State*, 859 So. 2d 320, 332 (Miss. 2003) (other crimes evidence admissible to tell rational and coherent story of what happened). Moreover, M.R.E. 404(b) makes clear that such evidence is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident . . ."

Chandler argues that counsel should have objected to evidence that Chandler characterizes as evidence of "drug dealing and gun theft." The state put on evidence through its witnesses that the murder was a result of Chandler's belief that Emmitt had taken a pound of marijuana from

Chandler's car and that the ultimate confrontation between the two men revolved around the missing marijuana. Also, state witnesses established that Chandler had his uncle's gun, which he had taken the day of the murder from his uncle's care without permission. (S.C.R., vol. 4, p. 403). Indeed, Chandler himself testified that he had possessed the marijuana, (S.C.R., vol. 5, p. 452), as well as "borrowing" his uncle's gun because he felt the need to protect himself. *Id.* at p. 486.

The evidence was not offered as a testament to Chandler's character; instead, based on the facts and circumstances taken as a whole, the evidence was necessary to show a complete picture of the events leading up to the murder – and to show the state's theory regarding Chandler's motive. Evidence of the marijuana dealing and the essential theft of his uncle's gun were so interrelated to Emmitt's murder that it "constitute[d] a single transaction or occurrence or a closely related series of transactions or occurrences." *Neal*, 451 So. 2d at 758-59. Accordingly, counsel had no basis upon to lodge a meritorious objection, and counsel's decision not to object constituted effective assistance. Chandler has not shown that counsel's conduct was deficient; nor does he meet the Supreme Court's standard outlined in *Strickland*. Therefore, this claim will be dismissed.

## Failure To Request Impeachment Instruction

In Ground Eight, Chandler argues counsel was ineffective because he did not request an "impeachment" instruction. Chandler claims that the testimony of all the state's witnesses was impeached, and without the eyewitness testimony, little concrete evidence existed to refute evidence offered by the defense that the shooting was the result of an accident or imperfect self-defense. He further claims that without an impeachment instruction, the jury was not given an effective vehicle with which to weigh, evaluate, and analyze the impeachment evidence or witnesses.

State law provides that an impeachment instruction is warranted where a key witness testifying for the state had given a prior inconsistent statement that "directly contradicted his trial testimony against the defendant." *Ellis v. State*, 790 So. 2d 813, 815-16 (Miss. 2001); *see also Finley v. State*, 725 So. 2d 226, 231-32 (Miss. 1998).

In the present case, Chandler claims the testimony of two of the state's witnesses, Carouthers and Gustavis, was impeached by their original statements to police on the night of the shooting. Carouthers and Gustavis originally gave statements to police that they were inside the house at the time of the shooting and did not see anything. S.C.R., vol. 3, pp. 188, 281-82.[6] At trial, both Carouthers and Gustavis testified that they were present in the woods just moments before the shooting occurred, that they observed Chandler holding a gun, and that they did not see the victim with a gun nor hear him make any threats to Chandler. *Id.* at pp. 184-85, 230-35. Further, Gustavis testified that he saw Chandler point the gun at and shoot Emmitt. *Id.* at 288, 295.

---

[6] Another of the state's witnesses, Antoine Belt, testified that he was not questioned by officers nor did he voluntarily give a statement to police on the scene. (S.C.R., vol. 3, pp. 227-28). Accordingly, Belt did not give any type of statement prior to his trial testimony which contradicted what he testified to at trial.

Despite Chandler's arguments, the inconsistent statements were first brought to the jury's attention by the prosecution during direct examination of Carouthers and Gustavis. S.C.R., vol. 3, pp. 188, 227. Following direct examination, defense counsel also questioned the two witnesses vigorously with regard to their initial statements to police during cross-examination. S.C.R., vol. 3, pp. 190-99; vol. 4, 305-11. Therefore, both sides had ample opportunity to question each witness regarding any inconsistent testimony they may have given before their testimony at trial.

Further, a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008). Even if Chandler could establish that he was entitled to such an instruction, counsel's decision not to request an impeachment instruction with regard to the testimony of Carouthers and Gustavis was a matter of trial strategy – especially in light of the fact that the trial court provided an instruction on credibility that covered the issue of credibility.

Counsel actually submitted Jury Instruction D-9, which listed the factors which the jury could consider in weighing the testimony and the believability of the witnesses. S.C.R., vol. 1, p. 55.[7]

---

[7] Instruction D-9 stated as follows:

> Each person testifying in this case is a witness. You, individually, must determine the believability of the witness. I instruct you that you may consider the following factors in weighing the testimony of a witness:
>
> 1. the intelligence of the witness;
> 2. the ability of the witness to observe and accurately remember;
> 3. the sincerity, or lack of sincerity, of a witness;
> 4. the demeanor of the witness;
> 5. the extent to which the testimony of the witness is supported or contradicted by other evidence;
> 6. whether discrepancies in testimony are the result of innocent

However, the trial judge refused to grant the instruction, finding that Instruction C.01 informed the jurors of their duties as the sole judges of the weight to be afforded a witness' testimony. S.C.R., vol. 6, p. 666. Instruction C.01, which was the court's instruction given to the jury, stated, in pertinent part:

> You are the sole judges of the facts in this case. Your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case.

*See* S.C.R., vol. 1, pp. 34-36.

Chandler cannot show that he was prejudiced by counsel's failure to seek an additional impeachment instruction when the jury was instructed regarding their duty to weigh the credibility of the witnesses. As mentioned above, counsel vigorously questioned the state's witnesses on cross-examination and argued during closing that the witnesses were not credible. The jury was undoubtably aware of the facts that could have weakened the witnesses' credibility and are presumed to have followed the court's instruction with regard to their determinations concerning each witness' credibility. As Chandler has not shown any deficiency or prejudice in counsel's actions at trial on this issue, the claim lacks merit and will be dismissed.

---

mistake or deliberate falsehood; and
7. any other characteristic noted by you.

I instruct you that you may reject or accept all or any part of the testimony of a witness; or, you may reject parts, but accept other parts of the testimony of each witness.

After making you own judgment, give the testimony of each witness credibility, in any, you think it deserves.

## Ineffective Assistance of Counsel on Direct Appeal

In Ground Nine, Chandler claims that counsel's performance on direct appeal was deficient because counsel did not raise the claim that trial counsel was deficient as Chandler argued in Grounds Two through Eight of his federal petition. "Because a criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal as of right, the *Strickland* standard applies to claims of ineffective assistance of counsel by both trial and appellate counsel." *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (internal citations omitted); *see also Evitts v. Lucey*, 496 U.S. 387, 397-99 (1985). Appellate counsel does not have a duty to raise every "colorable" claim on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1985) ("Neither *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."); *see also Green v. Johnson*, 116 F.3d 1125, 1126 (5th Cir. 1997) (Counsel is not deficient for failing to raise every meritorious claim that may be pressed on appeal). In the instant case, the decision regarding which issues to appeal was one of strategy, and Chandler has not shown that counsel's strategy was ineffective. Chandler's claims of ineffective assistance of counsel are without merit because counsel's decision not to raise meritless issues on appeal constitutes effective assistance. Accordingly, Petitioner is not entitled to relief based on this claim, and it will be dismissed.

## Cumulative Error

In a motion to amend his federal petition for a writ of *habeas corpus*, Chandler argues that his trial was unfair because of the cumulative effect of the errors assigned above. This claim was not raised and exhausted in state court; as such, Chandler has no available avenue in which to pursue these claims in the state's highest court. When state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are barred from reviewing those claims. *Sones v. Hargett*, 61 F.3d 410 (5th Cir. 1995). Moreover, cumulative error can be an independent basis for *habeas corpus* relief only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). In evaluating the sufficiency of a cumulative error charge, meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised. *Derden*, 978 F.2d at 1461. Because Chandler failed to raise this claim in state court, this claim is barred in federal court. Further, because no merit can be found in any of Chandler's claims, a cumulative error charge lacks support. Accordingly, this claim will be dismissed.

For the reasons set forth above, Chandler has not demonstrated that the denial of these issues in state court was contrary to, or involved an unreasonable application of, clearly established federal law; nor was the denial based on an unreasonable determination of facts in light of the evidence presented in state court proceedings. As such, Chandler's petition for a writ of *habeas corpus* is without merit will be dismissed with prejudice. A final judgment in accordance with this memorandum opinion will issue today.

**THIS** the 13th day of May, 2010

 **/s/ Sharion Aycock**          
**U.S. DISTRICT JUDGE**