# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**JOEY MONTRELL CHANDLER**                                              **PETITIONER**

**v.**                                                                                            **No. 1:08CV93-A-D**

**MARSHALL COUNTY**
**CORRECTIONAL CENTER, ET AL.**                                   **RESPONDENTS**

**MEMORANDUM OPINION *DENYING* PETITIONER'S MOTION [88]**
**TO VACATE ORDER, *GRANTING* PETITIONER'S MOTION [89]**
**FOR REQUISITE EXPRESS DETERMINATION (BUT DENYING**
**RELIEF ON THE ADDITIONAL GROUND CONSIDERED), *DENYING***
**PETITIONER'S MOTION [90] FOR RECONSIDERATION**

This matter comes before the court on the petitioner's motions [88] to vacate order, [89] for "Requisite Express Determination," and [90] for reconsideration. For the reasons set forth below, the petitioner's motion [88] to vacate judgment will be denied; his motion [89] for "Requisite Express Determination" will be granted (but substantive relief sought in the newly considered ground for relief will be denied); and the motion [90] for reconsideration will be denied.

**Motion [88] to Vacate Order**

In his motion [88] under FED. R. CIV. P. 59(e) to vacate the court's order denying a Certificate of Appealability and to proceed *in forma pauperis*, Chandler takes issue with the court's determination of these issues before he sought leave for either. The court must now, however, follow recent revisions to the Rules Governing Habeas Corpus Cases Under Section 2254, including Rule 11, which requires the court "issue or deny a certificate of appealability when it enters a final order . . . ." The court must analyze the potential merit of an appeal to determine whether a certificate of appealability should issue – and must make the same analysis when determining whether to permit an appellant to proceed *in forma pauperis*. As such, the court makes these rulings

simultaneously. In this case, the court erroneously included in its order the language "a notice of appeal having been filed," when, in fact, Chandler had not yet filed a notice of appeal. Although the inclusion of that language was erroneous, the court's decision was proper. As such, Chandler's Motion [88] to Vacate order will be denied.

## Motion [90] to Alter Judgment

The petitioner has moved [90] under FED. R. CIV. P. 59(e) to alter or amend the judgment for all of the grounds for relief rejected by the court in its May 13, 2010, memorandum opinion and final judgment. "A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could and should have been made before the judgment issued." *Schiller v. Physicians Resource Group, Inc.,* 342 F.3d 563, 567 (5th Cir. 2003) (citations and internal quotation marks omitted). Relief is also warranted under Rule 59(e) when there has been "an intervening change in the controlling law." *Id.* (citations omitted). Chandler challenges the court's decision on all grounds raised in the petition. The court will discuss each issue in turn.

## Ground One: Whether the Trial Court Should Have Permitted Jury Instructions on the Lesser Included Offense of Manslaughter and Reasonable Self-Defense

Chandler argues that the trial court erred by denying a jury instruction offered by the defense regarding culpable negligence manslaughter and reasonable self-defense. This court denied *habeas corpus* relief on this ground because Chandler "failed to prove the state court's adjudication of the claim was (1) contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding," citing 28 U.S.C. § 2254. Specifically, the court found that there was no evidence in the record that the victim ever threatened Chandler – and thus that an instruction on reasonable self-defense was not supported in the record. In addition, the court found that an instruction on imperfect self-defense manslaughter was given, as well as an instruction on "accident or misfortune." The court held that, even if the trial court's decision to refuse the proffered instruction were held to be error, that the error did not "by itself so infect[] the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 147 (1973), and, as such, the decision did not rise to the level of a constitutional violation.

In his present motion, Chandler argues that the court used the wrong standard in rejecting the instructions at issue, citing *Reed v. Quarterman*, 504 F.3d 465 (5th Cir. 2007). *Reed*, however, uses the same standard Chandler challenges in this case – whether "reasonable jurists could debate whether the state court decision is 'based on an unreasonable determination of the facts' and whether the state court decision 'involved an unreasonable interpretation of clearly established federal law . . . .'" *Reed*, 504 F.3d at 492. Reed challenged his conviction for capital murder (murder committed in the course of attempted robbery or attempted aggravated rape), arguing that the *evidence* presented at trial could also have supported a conviction for the lesser include offense of first degree murder. He pointed out that the only evidence of attempted rape was that the victim was nude – and that the victim's autopsy did not show evidence of rape. He also pointed out that the only evidence of attempted robbery was that the victim's purse was lying on the couch with its contents spilled when a witness entered the room. The Fifth Circuit, in granting Reed's request for a Certificate of Appealability, held that – based on the evidence presented – reasonable jurists could differ whether the state court decision was "based on an unreasonable interpretation of the facts" or whether the

state court's decision "involved an unreasonable application of clearly established federal law."

This court applied that same standard to the present case – and concluded that the decision of the Mississippi Supreme Court in upholding the trial court's denial of the requested instructions was reasonable in fact and in law. In addition, this court held that even if the Mississippi Supreme Court's decision were erroneous, it did not "by itself so infect[] the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Chandler's arguments have not persuaded the court to alter its previous ruling on this issue.

### Ground Two: Ineffective Assistance of Counsel – Failure to Argue that Delays in the Prosecution of Chandler's Case Violated His Right to a Speedy Trial

Chandler argues that trial counsel and appellate counsel were ineffective for failing to raise the claim of denial of the right to a speedy trial. In its opinion, the court denied this claim based upon the federal standard for speedy trial claims found in *Barker v. Wingo*, 407 U.S. 514 (1972). Chandler now argues that, even though the right in Mississippi to a trial within 270 days of arraignment (MISS. CODE ANN. § 99-17-1) derives from state statute – and thus is not a right originating in the Constitution, laws, and treaties of the United States (a requirement for federal *habeas corpus* relief) – his claim is nevertheless valid because counsel was ineffective under the Constitution by failing to raise this claim under state law. Chandler also takes issue with the State's production of four orders granting continuances requested by the defense – arguing that the orders were not part of the state court record produced and filed for use in this *habeas corpus* proceeding.

First, the orders in question were entered on the trial court's docket, and the court accepts the four orders as an expansion of the record. Second, Chandler has not challenged the authenticity of the orders – or whether they were a part of the state court record – only the manner of their inclusion

in the record before this court. Third, Chandler has not set forth a timetable to prove his assertion that, under either state or federal law, the state violated Chandler's right to a speedy trial when taking into account the four orders in question. Finally, as the petitioner in this case, Chandler has the burden of proof on each issue, and he has not met that burden. The petitioner's motion to amend or alter judgment on this issue will be denied.

### Ground Three: Ineffective Assistance of Counsel – Failure to Seek an Impeachment Instruction Regarding Chandler's Statements to the Police

Chandler argues in Ground Three that trial counsel should have sought an instruction limiting the jury's use of Chandler's statement to police the day of the crime only to impeach his trial testimony and not as substantive evidence of his guilt or innocence. Chandler gave a statement to Deputy Joe Huffman the night of the shooting describing how he shot his cousin; during the statement, Chandler said, "I pulled the gun out and aimed it and shot, pulled the trigger." S.C.R., Vol. 5, p. 593. This statement gave an entirely different account of the shooting than Chandler's testimony, in which Chandler stated that his cousin Emmitt grabbed the pistol tucked in Chandler's pants, they struggled, Emmitt tried to turn the gun on him, and – during that struggle – the gun discharged three times, hitting Emmitt. S.C.R., Vol. 5, p. 494-497, 566-567.

The court held in its memorandum opinion and final judgment that this claim is without merit because the statement was first brought to the jury's attention by defense counsel during cross-examination of Deputy Huffman to establish that Chandler voluntarily contacted the police and turned himself in. Only later did the prosecution use the statement to impeach Chandler's version of events as related through his trial testimony. There is simply no prohibition against using a defendant's statements to the police to impeach his trial testimony. Thus, counsel had no reason to object to that testimony.

Under state law, Chandler was, indeed, entitled to an instruction limiting use of the statement to impeachment of his trial testimony as substantive evidence. *Sipp v. State,* 936 So.2d 326, 331(¶ 9) (Miss.2006). Such an instruction, however, would have been of little value.

The evidence admitted during trial set forth only *two* basic scenarios for the shooting. In the first scenario, Chandler took his uncle's pistol without permission, agreed to accompany his cousin Emmitt to a place in the woods, aimed the pistol at Emmitt, and shot him. The forensic evidence introduced, the testimony of several eyewitnesses, and Chandler's statement to Deputy Huffman are completely consistent with this version of events.

In the second scenario, Chandler took his uncle's pistol without permission, agreed to accompany his cousin Emmitt to a place in the woods, and during a heated and irrational argument, Emmitt grabbed the pistol tucked in Chandler's pants, they struggled, Emmitt tried to turn the gun on him, and – during that struggle – the gun discharged three times, hitting Emmitt twice, including one wound that passed through Emmitt's right arm and into his chest. The *only* evidence supporting this version of events was Chandler's testimony at trial. Indeed, all of the other evidence, both testimonial and forensic, was inconsistent with Chandler's trial testimony.

Thus, if Chandler's statement to the police (shooting was intentional and unprovoked) describing the second scenario impeached his testimony at trial (shooting occurring during a struggle), then the jury would give greater weight to the trial testimony. In other words, when a jury has only two conflicting versions of events from which to choose, evidence calling into question (impeaching) one version simply acts as substantive support for the other version. Sands trickling out of one side of an hourglass fill the other side. In this case, use of Chandler's statement had the same effect whether the statement was considered substantive evidence or impeachment evidence.

For this reason, an "impeachment instruction" would have had no impact on a reasonable juror's decision, and counsel made a reasonable decision not to seek such an instruction.

**Grounds Four and Five: Ineffective Assistance of Counsel – Failure to Object to the "Prejudicial and Speculative" Testimony of the State's Expert Witness, Dr. Steven Hayne**

Chandler argued in Grounds Four and Five that his attorney was ineffective for failing to object to testimony of Dr. Steven Hayne that Chandler characterizes as "prejudicial and speculative." The evidence in question is Dr. Hayne's testimony regarding the distance between the muzzle of the pistol and the victim when the pistol was fired. Dr. Hayne testified that there was no visible gunpowder residue in the victim's wounds and, as such, they were not contact wounds. S.C.R., Vol. 4, p. 388-390. Based on the absence of visible gunpowder residue in the wounds, Dr. Hayne testified that the gun was fired when it was anywhere from a quarter of an inch to many feet away from the victim. *Id.*

First, in an adversarial judicial system, the testimony put on by one's adversary will nearly always be prejudicial to one's case; otherwise the adversary would have no reason to present the proof. Prejudicial testimony, in and of itself, is not objectionable. Second, Dr. Hayne based his conclusions on his observations during his autopsy of the victim. As such, his testimony could hardly be called speculative. Indeed, Chandler has not presented proof that the results of such a test would have strengthened his defense. The test for gunpowder residue could well have come back negative (showing no gunpowder residue in the victim's wounds), and the requested test would thus have damaged Chandler's defense. Given the other evidence supporting the prosecution's theory of the case, this seems the most likely result.

On the other hand, if microscopic examination of the victim's wounds revealed the presence of gunpowder residue, that would not conclusively establish that the victim's injuries were contact

wounds. Deputy Joe Huffman testified that gunpowder residue can be deposited in many ways, including proximity to the weapon when it is fired and contact with skin, clothing, or objects having gunpowder residue on them. S.C.R. Vol. 4, p. 388-390. Emmitt Chandler fled the scene of the shooting on foot, and his clothing was later removed to facilitate medical intervention in a vain effort to save his life. There is no way to know whether contact with Emmitt's clothes, skin, or something else could have introduced gunpowder residue into his wounds during his flight from the scene or the efforts of medical personnel to save his life. Given these considerations, counsel's decision not to object to Dr. Hayne's testimony on this basis was sound. Chandler's motion to alter or amend judgment on this issue will be denied.

### Ground Six: Failure of Counsel to Seek a Jury Instruction on the Right to Carry a Concealed Weapon

Chandler states, without proof, that evidence in the record shows that he "was not only fearful of Emmitt when he went to get his uncle's gun, but remained fearful of [aggression from] Emmitt even after Emmitt had been shot, where [Chandler] ran from Emmitt as Emmitt chased him upon being shot." "[B]efore a defendant is entitled to such an instruction [on the right to carry a concealed weapon] there must be evidence to support the instruction." *Ray v. State*, 381 So.2d 1032, 1035 (Miss. 1980). In order to use such an instruction, a defendant must have "a good and sufficient reason to apprehend a serious attack from [the victim]." *Id.* Chandler cites the following portions of the record in support of this assertion, S.C.R. p. 341, 495-497. Unfortunately for Chandler, none of those pages in the record actually support the position that – before he armed himself – he had reason to fear his cousin Emmitt. The only evidence in the record showing that Chandler had reason to fear Emmitt is Chandler's testimony that Emmitt chased him *after* he shot Emmitt. Under Mississippi law, fear of the victim *after* the shooting does not justify the carrying a concealed

weapon *before* the shooting. *Ray*, 381 So.2d at 1035. Counsel's decision not to seek such an instruction was sound, and Chandler's motion to alter or amend judgment in Ground Six will be denied.

### Ground Seven: Ineffective Assistance of Counsel – Failure to Object to the Use of Evidence of Other Crimes the Petitioner Committed

Chandler argues that the court erred in denying his claim in Ground Seven by "craft[ing] new issues that the state did not raise." In Ground Seven, Chandler argues, "Petitioner was denied effective assistance of counsel at trial and on direct appeal where counsel failed to object to the admission of prejudicial and speculative expert testimony." The State argued that the "evidence was necessary to show a complete picture of how and why the State came about indicting and pursuing the charges at issue against Chandler, as well as proper to show Chandler's motive." State's Response [33], p. 30. The court held that "[t]he evidence was not offered as a testament to Chandler's character; instead, based on the facts and circumstances taken as a whole, the evidence was necessary to show a complete picture of the events leading up to the murder – and to show the state's theory regarding Chandler's motive." Thus, despite Chandler's arguments, the court did not "craft new issues that the state did not raise;" to the contrary, the court applied the governing law to the facts in the case – and accepted the argument and authority the State presented.

Chandler has not shown how this alleged error harmed his legal position – or even shown that counsel's decision not to object to the evidence or seek a limiting instruction was error at all. Under MISS. R. EV. 404(b), although evidence of other crimes or misdeeds is not admissible to prove the character of person in order to prove that the person acted in conformity with that character. Such proof may be admissible for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." MISS. R. EV. 404(b). The

State could not paint a rational picture of the events leading up to the shooting – or show motive (the stolen drugs) or preparation (theft of the gun) without mentioning these acts. Similarly, Chandler could not have put on proof of one of his defenses (self-defense) without mentioning these facts. Counsel had no basis for raising an objection to use of this evidence; as such his counsel was effective, and this ground for relief in the present motion will be denied.

**Ground Eight: Ineffective Assistance of Counsel – Failure to Seek an "Impeachment Instruction" Regarding the Prior Inconsistent Statements of the Testifying Eyewitnesses**

Carouthers and Gustavis, eyewitnesses to the murder in this case, initially gave statements to the police, then testified about the murder at trial. The statement each witness gave initially to the police was inconsistent with his testimony at trial. Carouthers and Gustavis stated to the police they were inside the house at the time of the shooting and did not see anything. S.C.R., vol. 3, pp. 188, 281-82.[1] At trial, however, both Carouthers and Gustavis testified that they were present in the woods moments before the shooting occurred, that they observed Chandler holding a gun, and that they did not see the victim with a gun nor hear him make any threats to Chandler. *Id.* at pp. 184-85, 230-35. Based upon the entirely different events described in the statements and testimony of these witnesses, Chandler argues in Ground Eight that he was entitled to an "impeachment instruction" directing the jury to use the prior statements only to determine the credibility of that witness at trial – and not as substantive evidence.

Chandler argues that he was entitled to such an instruction and, under Mississippi law, it appears that he is correct. *See Ferrill v. State*, 643 So.2d 501 (Miss. 1994). In *Ferrill*, the witness

---

[1] Another of the state's witnesses, Antoine Belt, testified that he was not questioned by officers nor did he voluntarily give a statement to police on the scene. (S.C.R., vol. 3, pp. 227-28). Accordingly, Belt did not give any type of statement prior to his trial testimony which contradicted what he testified to at trial.

initially testified that the Ferrills had no involvement in the drug transaction at issue in that case. *Id.* at 505. He testified at trial, however, that the Ferrills were, indeed, involved with the drug transaction. *Id.* at 505. In that case, the Mississippi Supreme Court held that the trial court erred in refusing the following instruction:

> The Court instructs the jury that the testimony of a witness may be discredited or impeached by showing that on a prior occasion they have made a statement which is inconsist[e]nt or contradictory statement must involve a matter which is material to the issues in this case.
>
> A prior statement of the witness or witnesses can be considered by you only for the purpose of determining the weight or believability that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statements as proving the guilt or innocence of the accused.

*Id.* at 504-505. The Mississippi Supreme Court also held that the refusal to grant such an instruction, under the facts of that case, warranted reversal. The relevant facts were not only that the witness had given a sworn inconsistent statement before testifying, but also that the witness was an accomplice – and the trial court also refused an instruction on the "great caution" jurors should exercise when considering accomplice testimony, and the Mississippi Supreme Court found that, too, to be error. *Id.* at 506. In addition, the Mississippi Supreme Court held, "Other than [the witness's] testimony, there was little concrete evidence which [implicated the defendants]," and the court could not "say that a hypothetical, reasonable juror could not find the facts as suggested by the defense."

**Ferrill Can Be Distinguished from the Present Case in Three Ways**

There are three key differences to consider between *Ferrill* and the present case. First, the state introduced other concrete evidence tending to show Chandler's guilt. Second, *Ferrill* was on direct appeal to the Mississippi Supreme Court, while this court is conducting *habeas corpus* review – which requires great deference to the state court decision. 28 U.S.C. § 2254(d). Third, the issue

-11-

before the Mississippi Supreme Court in *Ferrill* was whether the trial court's failure to give a *requested* impeachment instruction was error. The issue before this court is different – whether trial counsel was ineffective for failing to *seek* such an instruction. Once again, two different standards apply.

As discussed below, these three considerations lead the court to conclude that trial counsel's decision not to seek an impeachment instruction regarding the eyewitness testimony of Carouthers and Gustavis was a valid trial strategy or, at most, harmless error.

## Other Evidence of Chandler's Guilt

No one disputes that Chandler took a gun from his uncle and shot his cousin Emmitt with it. The evidence at issue is that which would support either Chandler's version of events (struggle over the weapon) – or that of the eyewitnesses (unprovoked shooting). Chandler was not convicted of murder based solely on eyewitness testimony. Absolutely none of the other evidence introduced at trial supported Chandler's testimony – not even Chandler's statement to the police given on the night of the shooting. The State Pathologist, Dr. Steven Hayne, testified that, based upon the angle the bullets entered Emmitt's body, it is unlikely that the fatal shots could have occurred during a struggle. S.C.R. Vol. 4, p, 360, 367-368, 377-378. In addition, Emmitt had no defensive wounds on his body consistent with the struggle Chandler described. S.C.R., Vol. 4, p. 363-365. Third, the grass in the woods where the shooting occurred was only flattened in a small area consistent with a quick shooting and no struggle – as would happen when a victim simply falls down after being shot) – not in a wider pattern consistent with a struggle as described by Chandler. S.C.R., Vol. 4, p. 436, 437. All of the evidence bearing how the shooting transpired supports the state's theory of the case – all evidence except Chandler's trial testimony.

**Federal *Habeas Corpus* Review of Ineffective Assistance of Counsel Claim**

The standard for ineffective assistance has two elements. Chandler must first prove that counsel's representation fell below the accepted standard for attorneys; then he must prove that the ineffective representation harmed his legal position. *Strickland v. Washington*, 466 U.S. 668 (1984). Although Chandler has arguably shown that, under Mississippi law, he was entitled to an impeachment instruction, he has not shown that counsel was ineffective for deciding not to seek such an instruction; nor has he shown that an impeachment instruction would have resulted in an outcome at trial other than his conviction.

A federal court on *habeas corpus* review must give great deference to state court findings of fact and conclusions of law. 28 U.S.C. § 2254(d)(1) and (d)(2). Chandler has neither alleged nor proved that the state court determined the facts of the case unreasonably in light of the evidence presented; as such, 28 U.S.C. § 2254(d)(2) does not apply. Chandler argues that counsel's failure to seek an impeachment instruction under state law constituted ineffective assistance of counsel – and that the Mississippi Supreme Court erred when it held otherwise. Chandler's claim does not, however, meet the *Strickland* standard because an impeachment instruction would not have changed the outcome of his trial. Both sides brought out the stark differences between the witnesses' statements and trial testimony. S.C.R., Vol. 3, p. 188, 190, 193-203, 281-282, Vol. 4, 306-313. In addition, defense counsel argued in closing that the eyewitness testimony could not be believed based upon the initial witness statements. S.C.R. , Vol. 6, p. 703-706, 710, 710-714. Further, although the court did not give an impeachment instruction to the jury, it did give a general instruction regarding the credibility of witnesses:

> You are the sole judges of the facts in this case. Your exclusive province is to determine what weight and what credibility will be assigned the testimony and

supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case.

*See* S.C.R., Vol. 1, pp. 34-36.

Under these circumstances, no rational jury could have heard the differences between the initial statements and trial testimony of Carouthers and Gustavis without making a determination about their credibility. Indeed, these witnesses told investigators that they were inside a nearby house when the shooting occurred. The statements neither incriminate nor exculpate Chandler. Thus, the *only* rational way the juror, using "good common sense and sound honest judgment" could consider the statements was to measure the credibility of Carouthers and Gustavis. This, coupled with the general instruction on witness credibility, ensured that the jury would consider the statements of the eyewitnesses for impeachment purposes only. As such, even if counsel's decision not to seek an impeachment instruction constituted an error under state law, the error did not harm Chandler's legal position – and thus did not constitute ineffective assistance of counsel under federal law.

### Ground Nine: Ineffective Assistance of Appellate Counsel for Failing to Raise on Appeal the Issue of Ineffective Assistance of Trial Counsel

Chandler argues in Ground Nine of his petition that his appellate counsel was ineffective because he did not argue that trial counsel had been ineffective. The court ruled in its memorandum opinion that, as trial counsel had properly represented Chandler, appellate counsel was effective in his decision not to argue otherwise. Given the discussion above, that ruling has not changed.

### Cumulative Error

Finally, Chandler argues that the court erred in rejecting his cumulative error argument. The court denied the ground because none of the grounds for relief has merit, the ground for relief lacks

support, and because Chandler failed to raise cumulative error as an issue in state court. The court has not changed its opinion regarding these holdings. As such, Chandler's argument regarding cumulative error is denied.

**Motion [89] for "Requisite Express Determination"**

Chandler argues that the court did not rule on one of the grounds for relief in his petition. Upon review of the file, the court finds that Chandler is correct that the court did not discuss the ground for relief entitled "Ground Five" in his "Second Amendment to Petition," an issue similar to, but distinct from, the issues presented in Grounds Four and Five of the original *habeas corpus* petition.[2] As discussed below, the court holds that "Ground Five" as set forth in Chandler's "Second Amendment to Petition" is without merit and will be denied.

The claim in question is, "Trial counsel was ineffective in failing to adequately investigate the case." Specifically, Chandler argues that trial counsel failed to interview the State's pathologist, Dr. Stephen Hayne, regarding Hayne's prospective testimony – and failed to request and inspect the victim's clothing for the presence of gunpowder residue – or seek gunpowder residue tests for the victim's hands. Chandler argues that counsel *might* have uncovered evidence to support Chandler's argument that the victim was shot in a struggle over the .357 magnum Chandler took from his uncle's car. The Mississippi Supreme Court decided this issue (and all other issues Chandler raised in his petition for post-conviction relief) on the merits.

The ground in question is a claim that trial counsel was ineffective for failure to investigate

---

[2]Using Chandler's numbering, his petition would have had two issues enumerated as "Ground Five."

Chandler's case.[3] To prove this claim, Chandler must show that trial counsel's performance was defective and that the defective performance prejudiced his legal position. *Strickland v. Washington*, 466 U.S. 668 (1984). Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

According to Chandler, his counsel should have interviewed Dr. Stephen Hayne, inspected the victim's clothes, and ensured that tests for gunpowder residue were performed on the victim's clothes and hands. Chandler believes that the tests might have shown that the victim had gunpowder residue on his hands – thus supporting Chandler's defense that he and the victim struggled over the gun and it fired accidentally. He also believes that the tests might have shown that the victim's gunshot wounds were "close contact wounds," which would also support Chandler's defense. These

---

[3]Such a failure can rise to the level of a constitutional violation. *See Anderson v. Johnson,* 338 F.3d 382, 391 (5th Cir.2003) ("Guided by *Strickland,* we have held that counsel's failure to interview eyewitnesses to a charged crime constitutes constitutionally deficient representation." (quotation omitted)). Chandler has not, however, alleged that his attorney failed to interview an eyewitness to the crime.

arguments are without merit.

First, Chandler acknowledges that his attorney knew from discovery "the State's evidence related to Expert Hayne." Thus, counsel had reviewed the evidence Hayne would offer and knew the State's theory of the case. Counsel knew how Dr. Hayne would testify, and Chandler offers no argument or proof that additional inquiry through discovery would have unearthed evidence supporting his defense. The same is true of the inspection and additional testing Chandler believes should have taken place. Chandler does not entertain the possibility that such inspections and tests – if performed – might just as easily have supported the State's theory of the case. In that instance, had his attorney insisted upon further inspection and testing, the results would have undermined Chandler's primary defense. Counsel knew that eyewitnesses would testify that Chandler simply shot his cousin with no provocation. Having received discovery from the State, counsel knew how Dr. Stephen Hayne would testify regarding the cause and manner of death. Counsel also knew that Chandler had told the police that he aimed the pistol at his cousin and pulled the trigger.

Further, according to the testimony of Deputy Joe Huffman, although gunpowder residue may be found on the skin, hair, and clothing of the person firing a weapon, it may also be found on someone in close proximity to the weapon being fired, or by touching another person with gunpowder residue on them. S.C.R. Vol. 4, p. 437-438. Thus, a positive test for gunpowder residue on the victim's clothing or hands would prove only that the victim was either in close proximity to Chandler – touched Chandler – or touched a surface with gunpowder residue on it. For this reason, the presence of gunpowder residue on someone's hands or clothing is not conclusive as to whether that person recently fired a gun. *Id.* Therefore, gunpowder residue on the victim would be consistent with both the prosecution's theory of the case (that Chandler shot his cousin at close range) and the

defense theory (that Chandler and his cousin wrestled for control of the gun and it discharged).

Counsel's decision not to pursue such avenues is a strategic one that the court will not second-guess – a decision leaving enough "wiggle-room" to argue in closing that reasonable doubt existed because the State had failed to conduct such testing and record the results.[4] For these reasons, Chandler's Motion for Requisite Express Determination will be granted, and "Ground Five" (as set forth in his April 29, 2009, "Second Amendment to Petition") will be denied.

In sum, the petitioner's motion [88] to vacate judgment will be denied, the petitioner's motion [89] for requisite express determination will be granted, but the substantive relief sought after considering the ground in question will be denied, and the petitioner's motion [90] for reconsideration will be denied.

**SO ORDERED,** this the 14th day of September, 2010.

                                                 /s/ Sharion Aycock
                                                **U.S. DISTRICT JUDGE**

---

[4]"A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689.